UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MARLON MAURICIO FUNES GARCIA,

Petitioner,

v.

SERGIO ALBARRAN, Field Office Director of the San Francisco Immigration and Customs Enforcement Office; DAVID J. VENTURELLA, Acting Director of United States Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the United States Department of Homeland Security, TODD BLANCHE, Attorney General of the United States, acting in their official capacities,

Respondents.

Case No. 3:26-cv-10634-BLF

**ORDER GRANTING EX PARTE TEMPORARY RESTRAINING ORDER APPLICATION**

Before the Court is Petitioner Marlon Mauricio Funes Garcia *ex parte* application for a temporary restraining order ("TRO"), seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See* ECF 3-1. The application for TRO was filed shortly after Mr. Garcia filed a petition for writ of habeas corpus against Respondents. *See* Pet., ECF 1.

Mr. Garcia's application for a TRO is GRANTED for the following reasons.

## I. BACKGROUND

Petitioner Marlon Mauricio Funes Garcia ("Petitioner") is a 39-year-old citizen of Honduras. He entered the United States without inspection in 2024. Respondents encountered Petitioner near the U.S.-Mexico border and detained him there. On March 4, 2024, DHS issued Petitioner a Notice to Appear charging him with inadmissibility under INA §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i), 8 U.S.C. § 1182, and released him from custody to pursue asylum proceedings.

United States District Court
Northern District of California

After his release, Petitioner settled in the San Francisco Bay Area. He filed a change of address with the immigration court in 2025 and timely filed a Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture on February 11, 2025. Since his release, Petitioner has attended every immigration court hearing and every required ICE check-in.

In August 2026, Petitioner was charged with insurance fraud in San Mateo County Superior Court. He was not arrested. He was not convicted. He promptly retained criminal defense counsel, who appeared with him at a hearing on September 16, 2026; the state court set a further date to allow counsel time to review the pending charges, and no conviction resulted.

Mr. Garcia attended his regularly scheduled ICE check-in today. Respondents re-arrested him there. Mr. Garcia seeks immediate release from custody. Petitioner also suffers from spine and leg pain and stiffness resulting from a recent accident, and his detention interferes with his ability to obtain treatment for that condition. He contends that his detention impairs his ability to consult with and assist counsel in his pending applications for asylum, withholding of removal, and protection under the Convention Against Torture, and in his pending state criminal matter.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The *Winter* test is a balancing test. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump,* 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

### A. Notice

The Court finds that the requirements for issuing a TRO without notice are satisfied. *See* Fed. R. Civ. P. 65(b)(1) (setting forth requirements for issuance of a TRO without notice). The papers filed by Mr. Garcia's counsel put forth specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. Moreover, counsel for Petitioner has provided notice of the request for TRO to the U.S. Attorney's Office for the Northern District of California.

### B. *Winter* Factors

All four *Winter* factors cut in favor of a TRO.

First, Mr. Garcia has demonstrated a likelihood of success on the merits of his procedural due process claim. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). And "a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *6 (N.D. Cal. Oct. 3, 2025); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Mr. Garcia has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in his favor. *Weber*, 767 F.3d at 942.

The caselaw in this district is clear. Mr. Garcia's detention—absent being convicted of a crime—raises serious liberty and procedural due process concerns. *See, e.g., Moises V.A. v. Wofford,* 2026 WL 252237, at *2 (E.D. Cal. Jan. 30, 2026). Detention of this nature without the proper procedural safeguards requires a showing of exigent circumstances that are not present here. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Court agrees with the Petitioner that Petitioner—arrested while attending his own ICE check-in—does not appear to be either a flight risk or a danger. ECF No. 3-1. Mr. Garcia has remained free since his release in 2024 and has since complied with every immigration obligation and attended every required immigration check-in. And although Petitioner has been charged with insurance fraud in the San Mateo County Superior Court, he has not been convicted. Being charged with a crime does not abdicate one's due process rights. These circumstances warrant issuance of a TRO. *See also Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. July 24, 2025) (due process clause entitles immigrants situated like Mr. Garcia a bond hearing before a neutral immigration judge prior to arrest or detention); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 1033 n.4 (N.D. Cal. July 17, 2025) (collecting cases); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

Second, Mr. Garcia is likely to suffer irreparable harm should the TRO not issue. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Those risks are present here. And indeed, it bears emphasis that Petitioner also suffers from spine and leg pain and stiffness resulting from a recent accident, which exacerbates the already sufficient risk of irreparable harm.

Third, the balance of equities tips sharply in Mr. Garcia's favor, and it is not a close call. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are

United States District Court
Northern District of California

staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). In the counterfactual world where no TRO issues, Mr. Garcia faces a severe and compounding deprivation of his constitutional liberty interest. In contrast, with the issuance of this TRO, the government is merely subjected to short delay in detaining Mr. Garcia. It also bears mentioning that a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

**C. SECURITY**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to Respondents resulting from this TRO, issuance of the TRO without a security is appropriate.

**D. ORDER**

(1) Mr. Garcia's application for a TRO is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Mr. Garcia immediately from custody and are ENJOINED from re-detaining Mr. Garcia while this TRO is in effect. Respondents are ENJOINED from removing Mr. Garcia from this judicial district, and, if they have already done so, are ORDERED to return him to this judicial district.

(3) Respondents are ENJOINED from removing Mr. Garcia from the United States while this TRO is in effect.

(4) Respondents are ORDERED TO SHOW CAUSE at an in-person hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on September 24, 2026, why a preliminary injunction should not issue. Respondents SHALL file a response to Mr. Garcia's motion by 12:00 p.m. on September 21, 2026. Any reply SHALL be filed by 12:00 p.m. on September 23, 2026. The assigned Judge may modify this schedule.

(5) Mr. Garcia SHALL serve on Respondents the petition, summons, and this order by 12:00 p.m. on September 18, 2026.

(6) Respondents SHALL file a status report regarding their compliance with this order by 4:00 p.m. on September 18, 2026.

(7) This order shall remain in effect until 4:00 p.m. on October 1, 2026.

**IT IS SO ORDERED.**

Dated: September 17, 2026

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California