United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARLON MAURICIO FUNES GARCIA,<br>Plaintiff,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Defendants. | Case No. 26-cv-10634-BLF<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, PERMANENT INJUNCTION**<br><br>[Re: ECF No. 1] |

Petitioner Marlon Mauricio Funes Garcia, after being detained by U.S. Immigration and Customs Enforcement ("ICE"), filed a habeas petition and request for a temporary restraining order ("TRO"). *See* ECF Nos. 1 ("Pet."), 3 ("TRO Request"), 15 ("Return"); 18 ("Traverse"). The Court granted the request for a TRO and ordered Respondents to show cause why a preliminary injunction should not issue. *See* ECF No. 4 at 5. Prior to the hearing, the Court advised the parties that it would consider final disposition of the petition along with consideration of Mr. Garcia's request for a preliminary injunction. *See* ECF No. 6. The Court held a hearing on October 8, 2026, where it considered both the habeas petition and preliminary injunction.[1] *See* Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing.").

The Court rules on the habeas petition as follows.

## I. BACKGROUND

Mr. Garcia is a 39-year-old Honduras citizen. Pet. ¶ 1. In 2024, he entered the United States

[1] At the hearing, counsel for Mr. Garcia also sought an injunction that Mr. Garcia be released on the same conditions as his prior release—that is, that the frequency of Mr. Garcia's required ICE check-ins be restored to the pre-detention frequency. This request is beyond the scope of this habeas petition.

without inspection to seek asylum. Pet. ¶ 30. Respondents encountered Mr. Garcia near the U.S.-Mexico border and detained him there. Pet. ¶ 30. On March 4, 2024, the Department of Homeland Security issued Mr. Garcia a Notice to Appear charging him with inadmissibility under INA §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i), 8 U.S.C. § 1182, and released him from custody to pursue asylum proceedings. Pet. ¶ 30.

After his release, Mr. Garcia settled in the San Francisco Bay Area. Pet. ¶ 32. In 2025, Mr. Garcia filed a change of address with the immigration court in 2025 and timely filed a Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture. Pet. ¶ 32. Since his release, Mr. Garcia has attended every immigration court hearing and every required ICE check-in. Pet. ¶ 32.

In August 2026, Mr. Garcia was charged with insurance fraud in San Mateo County Superior Court. Pet. ¶¶ 3, 34. He was not arrested. He was not convicted. Mr. Garcia promptly retained criminal defense counsel, who appeared with him at a hearing on September 16, 2026; the state court set a further date to allow counsel time to review the pending charges, and no conviction resulted. Pet. ¶ 3.

On September 17, 2026, Mr. Garcia attended his regularly scheduled ICE check-in. Pet. ¶ 35. Respondents re-arrested him there. Pet. ¶ 35. Mr. Garcia's habeas petition seeks relief on procedural due process, substantive due process, and Administrative Procedure Act grounds.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A person need not be physically imprisoned to be in custody under the statute; instead,

United States District Court
Northern District of California

habeas relief is available where the individual is subject to "restraints not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). Declaratory and injunctive relief are proper habeas remedies. *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)).

## III. DISCUSSION

### A. Jurisdiction

The parties dispute whether this Court has jurisdiction. Petitioner was first placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1). *See* Return at 7. Then, "[a]fter expressing a credible fear to return to Honduras," Petitioner was referred into removal proceedings under § 1229a. *Id.* After Petitioner's parole was terminated, Respondents contend that § 1225(b)(1) continued to govern. And § 1225(b)(1), Respondents contend, strips jurisdiction for "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to [8 U.S.C. § 1225(b)(1)], . . . a decision by the Attorney General to invoke the provisions of such section" and "the application of such section to individual aliens." Return at 7 (quoting 8 U.S.C. §§ 1252(a)(2)(A)(i)–(ii)). The three exceptions, the argument continues, do not apply here. *See* Return at 7; 8 U.S.C. § 1252(e)(2) (vesting jurisdiction to review "(A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under [8 U.S.C. § 1157], or has been granted asylum under [8 U.S.C. § 1158], such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to [8 U.S.C. § 1225(b)(1)(C)]").

Petitioner responds with recent Ninth Circuit authority holding that §§ 1252(a)(2)(A) and 1252(e)(2) do not bar a claim challenging "the constitutionality of a statute." Traverse at 3 (quoting *Padilla v. U.S. Immigration & Customs Enforcement*, 2026 WL 2822044, at *7 (9th Cir. Sept. 21, 2026)). Section 1252(a)(2)(A) only bars judicial review over decisions made under § 1225(b)(1) in a given case. *See Padilla*, WL 2822044, at *7. And § 1252(e)(2) only limits review of habeas claims that seek review of "determination[s] made under section 1225(b)(1)." Traverse at 8 (quoting 8

United States District Court
Northern District of California

U.S.C. § 1252(e)(2)). But Petitioner, the argument continues, is not challenging a decision made under § 1225(b)(1) (e.g., challenging the correctness of a credible-fear finding or a removal order), but lodging a constitutional challenge to the revocation of his parole and subsequent detention. *Compare Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020) (finding judicial review barred where the petitioner challenged the correctness of his own adverse credible-fear determination, which is a determination made under § 1225(b)(1)).

The Court finds that it has jurisdiction over this case. Section 1252(a)(2)(A) is inapplicable here. Mr. Garcia does not challenge any "individual determination" or assert a "cause or claim" concerning "the implementation or operation of an order of removal." *Padilla*, 2026 WL 2822044, at *7 (quoting 8 U.S.C. § 1252(a)(2)(A)(i)). Nor does he challenge "a decision by the Attorney General to invoke the provisions of [§ 1225(b)(1)] in a given case." *Id.* (quoting *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154 (9th Cir. 2022); 8 U.S.C. § 1252(a)(2)(A)(ii)). And Mr. Garcia does not challenge "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)." *Id.* at *7–8 (quoting 8 U.S.C. § 1252(a)(2)(A)(iv)). Mr. Garcia's claim, in other words, does not attack ***determinations*** made under § 1225(b)(1), but attacks § 1225(b)(1) itself.[2] Under *Padilla*, constitutional claims of this nature are not barred from judicial review. 2026 WL 2822044, at *7–9. And indeed, courts in the Ninth Circuit have held the same under substantially similar facts. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1162 (S.D. Cal. 2025) (holding that neither § 1252(a)(2)(A) nor § 1252(e) stripped jurisdiction where the petitioner challenged the government's authority to revoke his parole and detain him).

### B. Procedural Due Process[3]

Mr. Garcia contends that his "re-detention without a pre-deprivation hearing violated due process." Pet. ¶ 50. The Due Process Clause of the Fifth Amendment states that "[n]o person shall

---

[2] For the same reasons, § 1252(e)(2) is inapplicable. That provision exempts three "determinations made under section 1225(b)(1)" from § 1252(a)(2)(A)'s bar on judicial review. But again, Petitioner is not challenging a determination made under § 1225(b)(1).

[3] Mr. Garcia also argues that Respondents' conduct violates his substantive due process rights and the Administrative Procedure Act. Because the procedural due process issue is dispositive, the Court need not address the other claims. *See Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1148 (N.D. Cal. 2025).

. . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Once a protected liberty interest is identified, the Court determines what process is required by weighing the three *Mathews* factors. *See Mathews v. Eldrige*, 424 U.S. 319, 335 (1976).

**1. Protected Liberty Interest**

Mr. Garcia must first show that he has a constitutionally protected liberty interest. Mr. Garcia has, he argues, a "weighty liberty interest in avoiding re-incarceration" after his release. Pet. ¶ 48–49 (citing *Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972). Respondents counter that Mr. Garcia's "prior parole from custody does not give rise to a constitutionally protected liberty interest" and that Mr. Garcia's asserted interest "is not analogous to the recognized liberty interest of U.S. citizens facing re-detention." Return at 12.

The Court finds that Mr. Garcia has shown that he has a constitutionally protected liberty interest. The instant arrest occurred over two years after Mr. Garcia was released on parole. In the absence of authority to the contrary, these circumstances give rise to a vested liberty interest. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) ("[I]ndividuals conditionally released from detention have a protected interest in their continued liberty." (cleaned up)).

Respondents' authorities are inapposite. They stand for the basic proposition that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." Return at 16 (quoting *Demore v. Kim*, 538 U.S. 510, 522 (2003) and collecting cases). That general proposition neither forecloses Mr. Garcia's liberty interest nor supports the argument that Mr. Garcia "lack[s] a right to extra-statutory process" here. Return at 12.

**2. *Mathews* Factors**

The next question is what process, if any, is due. In making that determination, the Court

United States District Court
Northern District of California

weighs the *Mathews* factors[4]:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews*, 424 U.S. at 335.

The Court addresses the three factors in turn.

***First***, the private interest at stake—freedom from restraint—is salient. Mr. Garcia has been released on parole for two years. "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025).

Respondents acknowledge that noncitizens with "established connections" enjoy "greater due process rights." Return at 11. But Respondents attempt to argue that Mr. Garcia does not qualify as having "established connections" because he is "treated for constitutional purposes as if [he was] stopped at the border." Return at 11 (citing *Thuraissigiam*, 591 U.S. at 139–140). The Court disagrees. Regardless of whether Mr. Garcia had an extra-statutory liberty interest at his time of entry into the United States, he has since established the connections necessary to enjoy a liberty interest: Mr. Garcia lives with his family in California and works as a Lyft driver. Pet. ¶ 33; *see also J.A.M.C. v. Albarran*, 2025 WL 3268816, at *4 (N.D. Cal. Nov. 24, 2025); *Harrington v. Albarran*, 2026 WL 800113, at *6 (N.D. Cal. Mar. 23, 2026). Moreover, as discussed previously, Mr. Garcia was released on parole, which independently gives rise to a liberty interest. *See Young*, 520 U.S. at 146–47; *Gagnon*, 411 U.S. at 781–82; *Morrissey*, 408 U.S. at 482–83. Accordingly, the first factor favors Mr. Garcia.

---

[4] Respondents also argue that the "less demanding standard" from *Make the Rd. New York v. Mullin*, applies in lieu of *Mathews*. 179 F.4th 16, 33 (D.C. Cir. 2026). The Court declines the invitation to depart from the longstanding practice of the district courts of the Ninth Circuit in applying *Mathews* in the immigration detention context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022); *see also* Traverse at 8–9 (collecting cases).

***Second***, there is a significant risk that the government will erroneously deprive Mr. Garcia of his protected liberty interest absent a pre-detention hearing. Where "an individual has not received a bond or redetermination hearing, 'the risk of an erroneous deprivation of liberty is high.'" *Calderon*, 2025 WL 2430609, at *3–4 (quoting *Singh v. Andrews*, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). The government "has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Put another way, "civil immigration detention pending removal is only appropriate where the person is a danger to the community or a flight risk." *Cruz v. Albarran*, 2026 WL 2944153, at *6 (N.D. Cal. Sept. 30, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

Here, Respondents have not shown that Mr. Garcia's detention would serve either purpose—that is, to prevent flight or to protect the community from danger. Respondents' argument that Petitioner's insurance fraud charge is a "material change in circumstances" that "***statutorily***-authorized" the Department of Homeland Security "to terminate Petitioner's parole" says nothing about whether the Constitution tolerates such conduct. Return at 6 (emphasis added). As Mr. Garcia correctly explains, Respondents never made a showing that Mr. Garcia was a danger to the community or a flight risk. To the contrary, Mr. Garcia (1) was not arrested following the charges (suggesting that he was not a danger to the community); and (2) has appeared at state hearings relating to the charge after obtaining counsel (suggesting that he was not a flight risk). Charges and arrest, without more, are not sufficient to establish that a petition is a danger to the community. *See Ortega Macario v. Albarran*, 2026 WL 1916262, at *6 (N.D. Cal. Feb. 2, 2026) (prior arrests that "did not result in any convictions or even charges" did not constitute a material change); *see also Y.M.C.P. v. Albarran*, 2026 WL 2497562, at *2 (N.D. Cal. Aug. 25, 2026) (misdemeanor arrest "does not plausibly give rise to an inference" of increased dangerousness); *Larios v. Albarran*, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) (similar). Therefore, especially because Respondents have not made a showing of dangerousness or flight risk, the risk of erroneous detention is particularly steep, and the second factor also cuts in favor of Mr. Garcia.

***Third***, there is "no countervailing government interest . . . . that supports conducting a bond hearing only after [the petitioner] has been detained, rather than in advance thereof." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). Respondents do not contend otherwise. *See generally* Return. Indeed, any fiscal or administrative burden of a pre-detention hearing would be de minimis compared to the costs of detention. *See Hernandez*, 872 F.3d at 996 ("The costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million."). Accordingly, the third factor also cuts in favor of Mr. Garcia.

Having determined that all three *Mathews* factors cut in favor of Mr. Garcia, the Court concludes that due process requires that Respondents provide Mr. Garcia a pre-detention hearing before a neutral decisionmaker before his re-detention. *See Cruz*, 2026 WL 2944153, at *7.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The petition for writ of habeas corpus is GRANTED.

(2) Respondents are PERMANENTLY ENJOINED AND RESTRAINED from re-arresting or re-detaining Mr. Garcia unless and until they provide him a pre-detention bond hearing before a neutral immigration judge at which Respondents prove by clear and convincing evidence that Mr. Garcia is a flight risk or a danger to the community. Mr. Garcia must be provided with at least seven days' notice of any such bond hearing.

(3) The Clerk of the Court SHALL close the case.

**IT IS SO ORDERED.**

Dated: October 20, 2026

BETH LABSON FREEMAN
United States District Judge